# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| CENTER CAPITAL CORPORATION, | ) | Case No.: 2:09-cv-01367-RLH-PAL |
| Plaintiff, | ) | **O R D E R** |
| vs. | ) | (Motion for Default Judgment–#21; Motion for Summary Judgment–#22) |
| EAGLE JET AVIATION, INC., MILTON WOODS, individually, and ALEX PENLY, individually, | ) ) ) | |
| Defendants. | ) | |

Before the Court is Plaintiff Center Capital Corporation's **Motion for Default Judgment** (#21), filed January 8, 2010.

Also before the Court is Center Capital's **Motion for Summary Judgment** (#22), filed January 8, 2010. The Court has also considered Defendant Milton Wood's Opposition (#23), filed January 25, 2010, and Center Capital's Reply (#25), filed February 2, 2010.

## BACKGROUND

Plaintiff Center Capital, a Connecticut corporation, is in the business of making loans and raising capital for investment purposes. Defendant Eagle Jet Aviation does business in the aviation industry and, among other things, purchases airplanes for commercial use. Defendants Milton Woods and Alex Penly are current or former officers or directors of Milt's Eagle, LLC, a non-party to this litigation.

1

In 2005, Center Capital and Milt's Eagle entered into a contract in which Center Capital loaned funds to Milt Eagle so it could purchase and operate an airplane. In order to secure financing for the loan, Milt's Eagle granted Center Capital a security interest in the airplane. The parties ultimately entered into a series of contracts to finalize this transaction, the most important of which are the Aviation Master Loan and Security Agreement, the Loan Schedule Agreement, and the Engine Maintenance Agreement. In addition to these contracts, Center Capital entered into separate agreements with Milton Woods, Alex Penly, and Eagle Jet, respectively, in which all three parties agreed to guarantee "to [Center Capital] the prompt payment of all indebtedness" if Milt's Eagle failed to make its required monthly payments under the loan contracts.

Center Capital now alleges Milt's Eagle defaulted on its loan from Center Capital. According to Center Capital, Milt's Eagle failed to make its monthly payment on July 1, 2009, and has failed to make every monthly payment thereafter. Center Capital further alleges Milt's Eagle breached the Engine Maintenance Agreement by failing to make the necessary maintenance payments and by filing for bankruptcy on August 3, 2009. Although it has a security interest in the plane, Center Capital apparently has not sought to exercise its right of repossession. Instead, it alleges Milt's Eagle owes more than 1.5 million dollars under the loan agreement.

Well before Milt's Eagle fell behind on its loan payments, Woods and Penly engaged in a dispute regarding proper ownership and control of Milt's Eagle. In a case now pending before a Nevada state court, Woods alleges Penly wrongfully usurped control of Milt's Eagle and has been operating the company without Woods' consent. Also, according to Woods, Milt's Eagle has—at the instruction of Penly—filed for bankruptcy and, presumably, listed the plane as one of its assets.

On July 28, 2009, Center Capital filed suit in this Court. In its amended complaint, filed August 27, Center Capital brings three separate claims for breach of contract against Eagle Jet, Woods, and Penly, respectively. Center Capital now moves for default judgment against Eagle Jet and Penly and summary judgment against Woods. For the reasons discussed below, the Court

denies Center Capital's motion for default judgment and denies in part and grants in part its motion for summary judgment.

**DISCUSSION**

**I.     Motion for Default Judgment**

Center Capital first moves for default judgment against Eagle Jet and Penly on the basis that these Defendants have been properly served with a copy of the amended complaint and summons and have failed to respond. Center Capital alleges these parties are therefore jointly and severally liable under their respective guaranty agreements for $1,645,615.85, which is the sum of the loan balance plus interest, late fees, and attorney's fees and costs.

Even assuming Center Capital's damages calculations are correct, the Court denies its motion for default judgment in the amount it seeks. The Court does so because the loans in question were secured by the aircraft itself. Under the Aviation Master Loan, Milt's granted Center Capital a security interest in the plane, and it agreed that Center Capital would repossess the plane if Milt's defaulted on the loan. (Dkt. #21, Ex. A.) For this reason, the true amount of damages Eagle Jet and Penly (and Woods) owe under the contracts can only be determined after the collateral has been returned and either appraised or liquidated. For whatever reason, Center Capital has not informed the Court as to where the plane is located and who is currently in possession of it. Without this information, the Court cannot determine how much Defendants owe Center Capital, and consequently, what kind of default judgment should be entered. If Center Capital can show how much the plane is worth or for how much it has sold the plane, it can bring another motion for default judgment for the Court's consideration. *See* Fed. R. Civ. P. 55(b)(2) (Before ruling on a motion for default judgment, the Court may "conduct hearings or make referrals" in order to determine the proper amount of damages.). Accordingly, Center Capital's motion for default judgment against Eagle Jet and Penly is denied.

/

/

**II.     Motion for Summary Judgment**

Center Capital also brings a motion for summary judgment against Woods, the only Defendant who has answered the amended complaint.

**A.     Legal Standard**

A court will grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  In evaluating a motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

The movant bears the burden of showing that there are no genuine issues of material fact.  *Id.*  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the movant satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

/

**B.     Woods' Guaranty**

Center Capital argues it is entitled to summary judgment on its claim against Woods for breach of guaranty. Under Connecticut law, which governs this dispute,[1] in order to recover on a claim for breach of guaranty, the plaintiff must establish that: (1) it is owed a debt from a third party; (2) the defendant made a guaranty of payment of the debt; and (3) the debt has not been paid by either the third party or the defendant. *Chase Manhattan Bank, N.A. v. Harris*, 899 F. Supp. 64, 67 (D. Conn. 1995). According to Center Capital, there is no dispute regarding the fact that Milt's entered into a loan agreement, that Woods' made a guaranty on the agreement, and that neither party has performed under their respective contracts. In support of this assertion, Center Capital submits an affidavit from John Napierkowski, the company Vice-President, in which he testifies that neither Milt's nor Woods has paid under the original contract or the guaranty agreement.

Woods does not dispute in his opposition that he executed a guaranty on Milt's loan agreement with Center Capital. Instead, he disputes the amount of the debt he owes. Woods alleges he owes significantly less money on the guaranty because Center Capital failed to mitigate its damages by repossessing the airplane or by seeking a stay of relief in the bankruptcy proceedings. Instead, Woods alleges, Center Capital has permitted Penly (who Woods alleges now controls Milt's) to continue flying the plane, thereby increasing the amount of the debt each day it is used. Woods argues that despite his best efforts he has not been able to obtain control of Milt's in order to discontinue the flights, and that Center Capital, who has a security interest in the airplane, should have done so long ago. Woods further alleges that now that Milt's has filed for bankruptcy, Center Capital, as a secured creditor, should seek a relief from stay in the proceedings in order obtain possession of the plane and thereby mitigate its damages.

---

[1] The contracts between the parties establish that their relationships are all governed by Connecticut law.

5

1  In response to Woods' assertions, Center Capital argues that even if there is a
2  material factual dispute regarding money damages, the parties do not dispute that Woods is liable
3  under the guaranty agreement.  Center Capital therefore asks the Court, at the very least, to grant
4  its motion for summary judgment as to liability.  In support of this request, Center Capital cites to
5  Rule 56 of the Federal Rules of Civil Procedure: "An interlocutory summary judgment may be
6  rendered on liability alone, even if there is a genuine issue on the amount of damages." Fed. R.
7  Civ. P. 56(d)(2).

8  Having reviewed the motions and the attached documents and affidavits, the Court
9  grants Center Capital's motion for summary judgment as to liability under Woods' guaranty
10 agreement, but denies its motion for summary judgment as to damages.  The Court grants the
11 motion as to liability because Woods admits he is in default under the contract.  In his opposition,
12 Woods makes it clear that he disputes only "the amount of the debt" and whether Central Capital
13 adequately sought to mitigate its damages. (Dkt. #23, Opp'n 2.)  Given Woods' own admission
14 that he breached the guaranty agreement, the Court finds Center Capital is entitled to summary
15 judgment establishing that Woods is liable under the contract.

16 The Court denies Center Capital's motion for summary judgment to the extent it
17 seeks over 1.5 million dollars under Woods' guaranty agreement.  Woods has provided sufficient
18 evidence to create a factual dispute regarding whether Center Capital properly mitigated its
19 damages.  Woods has alleged, and Center Capital does not affirmatively deny, that Center Capital
20 has allowed the flights to continue despite its rightful claim to repossess the plane.  Furthermore, it
21 is possible that Center Capital, in order to adequately mitigate its damages, needs to establish—or
22 at least seek to establish— its security interest in and right of repossession of the airplane in Milt's
23 bankruptcy proceedings.  For these reasons, the Court finds a factual dispute remains regarding the
24 amount of damages to which Center Capital is entitled.

25 /
26 /

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Center Capital's Motion for Default Judgment (#21) is DENIED.

IT IS FURTHER ORDERED that Center Capital's Motion for Summary Judgment (#22) is GRANTED as to Woods' liability under the guaranty agreement and DENIED as to damages under that agreement.

Dated: April 20, 2010.

*/s/ Roger L. Hunt*

**ROGER L. HUNT**
**Chief United States District Judge**